**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

WESLEY CORPORATION, et al.,

    Plaintiffs,

        v.                                       Case No. 17-10021

ZOOM T.V. PRODUCTS, LLC, et al.,

    Defendants.
                                            /

**OPINION AND ORDER EXTENDING DEADLINES,**
**GRANTING IN PART DEFENDANTS' MOTION FOR PROTECTIVE ORDER,**
**AND ORDERING FURTHER BRIEFING**

This is not the first time these parties have been before the court. In July 2015, Plaintiffs brought suit against Defendant Zoom TV Products ("Zoom TV") for patent infringement and breach of contract. *See Wesley Corp. v. Zoom TV Prods.*, No. 15-12449 (Cleland, J.). The parties settled that case on July 22, 2016. (*See* Settlement Agreement Dkt. #1-1 Pg. ID 12.) The court entered a stipulated order of dismissal about a month later. *See Wesley Corp.*, No. 15-12449, Dkt. #30.

But Defendant Zoom TV and its marketing affiliate, Defendant Ideavillage Products Corporation ("Ideavillage"), have allegedly breached the settlement agreement. (*See* Dkt. #1.) They have also—along with ten John Doe Defendants—allegedly infringed on Plaintiffs' federally-registered trademark and patents since the effective date of the settlement. (*Id.*) Though a scheduling order was entered in this action in June, the parties have now—over five months later—brought rudimentary discovery disputes to the court. Presently before the court are three motions: a motion

for protective order filed by Defendants (Dkt. #36) and two motions to compel filed by Plaintiffs (Dkt. ##41, 42). Plaintiffs responded to Defendants' motion for a protective order. (Dkt. #39.) The court held a hearing on December 12, 2017. For the following reasons, the court will extend the deadlines in this case, limit the applicable discovery period, and order further submission from Plaintiffs.

## I. STANDARD

The scope of discovery is within the sound discretion of the court. *Anwar v. Dow Chem. Co.*, 876 F.3d 841, 854 (6th Cir. 2017); *Surles v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007). Unless the court limits discovery, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

Among the court's powers to regulate discovery is the authority to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" for good cause shown by the moving party. *See* Fed. R. Civ. P. 26(c). "[T]o justify a protective order, one of Rule 26(c)(1)'s enumerated harms must be illustrated with a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Serrano v. Cintas Corp.*, 699 F.3d 884, 901 (6th Cir. 2012). The party requesting a protective order must, therefore, point to facts showing that some discovery would cause annoyance, embarrassment, oppression, or undue burden or expense sufficient to justify entry of a protective order. *Id.*

## II. DISCUSSION

Defendants ask for a protective order limiting discovery to the time after the settlement agreement took effect. According to Defendants, any information or

documents from before the settlement agreement would be irrelevant. They also ask that Plaintiffs' counsel follow the Federal Rules of Civil Procedure and the Local Rules when setting depositions. (Dkt. #36.) Plaintiffs, in response, argue that they are entitled to discovery covering at least some time period before the settlement agreement and propose a little over seven months' worth, as they request discovery dating back to January 1, 2016. (Dkt. #39 Pg. ID 205–06.) They also argue that they properly noticed the depositions of which Defendants complain, and they point out that Defendants failed to attach to their motion the allegedly noncompliant deposition notices.

Plaintiffs, on the other hand, request an order compelling Defendants to produce documents in response to Plaintiffs' requests (Dkt. #42) and an order compelling Defendants to amend their interrogatory responses (Dkt. #41). To date, Defendants have not produced a single document. Instead, Defendants repeat the same objection to nearly every request for production. (*See* Dkt. ##42-1, 42-2.) Defendants also repeat the same objection to nearly every interrogatory. (*See* Dkt. ##41-1, 41-2.)

Plaintiffs also ask the court to order Defendants to verify their interrogatory answers and verify, as to their document production, "that a diligent search has been made by the custodians for responsive documents and ESI." (Dkt. #42 Pg. ID 365.) Plaintiffs request that this latter verification include "the date of such search; the name and address of such custodian; [and a statement that] the ESI search was made in accordance with best practices for each repository[,] including cell phones." (*Id.*) Defendants did not respond in briefing to these motions. At the hearing, Defendants represented that they had no responsive documents and that the appropriate verifications had been sent to Plaintiffs' counsel.

3

The court addresses each of these requests in turn.

## A. Protective Order

Defendants assert that they should not have to respond to discovery requests relating to a time before the court's entry of dismissal in the prior case. Anything prior to the entry of that dismissal, according to Defendants, would be irrelevant because Plaintiffs only seek relief "for activities of Defendants subsequent to the prior case." (Dkt. #36 Pg. ID 193.) Defendants argue that discovery should be limited to the period after the court's entry of dismissal in August 2016. It is a minor detail, but nonetheless unclear why that date would be identified and not the date of the settlement agreement, July 22. In any event, the court agrees with Plaintiffs that such a limitation is not warranted in this case.

Defendants have not, in their one page argument, offered a "specific demonstration of fact" that discovery of information prior to the settlement agreement would cause "annoyance, embarrassment, oppression, or undue burden or expense." Information and documents dating before the settlement agreement are not, as Defendants would have it, inherently irrelevant. It is entirely plausible that discovery sought by Plaintiffs could provide necessary or helpful context to the settlement, or could demonstrate that Defendants never intended to abide by the settlement agreement at all. The court will not speculate on as-yet unknown facts of this case, but only notes that these easily imagined possibilities make Defendants' claim of per se irrelevance unpersuasive.

The court will, however, impose a reasonable restriction on how far back discovery may extend. Because the parties' discovery is most obviously and

appropriately directed to providing context for the settlement, discovering activity for approximately three months before the agreement should sufficiently set the stage for Plaintiffs' claims in this case. Discovery, therefore, should not be sought for information or documents dating to before *on or about* April 22, 2016.

Defendants have also requested that the court order Plaintiffs to abide by both federal and local rules when setting depositions. The court, as noted below, will extend the deadline for Plaintiffs to take depositions. Given this extension—and given the parties' avowals in filing (Dkt. #45 Pg. ID 426) and at the hearing that they will coordinate depositions among themselves—the court need not address the propriety of Plaintiffs' earlier deposition notices.

### B. Motions to Compel

Plaintiffs attached to their motion Defendants' responses to interrogatories and requests for production. (*See* Dkt. ##41-1, 41-2, 42-1, 42-2.) They paint a bleak picture of Defendants' attitude in discovery as they robotically recite the same "objection" to each of Plaintiffs' sixteen interrogatories, save two. Defendants' refrain is this:

> ZOOM [or IDV] objects to this interrogatory as vague, overly broad, unduly burdensome, harassing, and/or seeking information that is irrelevant and/or not reasonably calculated to lead to the discovery of admissible evidence. Subject to, and without waiving its objection, . . .

Defendants do not explain why an interrogatory is vague, in what way it is overly broad, or provide any explanation of undue burden or harassment. No information is given in support of the claim that an interrogatory seeks irrelevant information. Defendants merely assert the "objection" and leave it to Plaintiffs—and the court—to try to sort out how and why the interrogatory is somehow improper.

Perhaps unsurprisingly, the court has found no even arguable deficiency with many of the interrogatories it has reviewed. Interrogatory 6, for example, asks: "If you contend that you ceased advertising and/or promotion of the Accused Products, describe in detail the factual and legal bases for such contention." (Dkt. #41-1 Pg. ID 323; Dkt. #41-2 Pg. ID 335.) This request merely asks Defendants to describe the bases for their belief (if they have one) that they ceased advertising and promotion of Plaintiffs' products. It is in no way vague. Neither is it overly broad, or unduly burdensome. Or harassing. Or seeking information that is irrelevant.

Defendants' foot-dragging obstructionism continues in its responses to Plaintiffs' requests for production. Again, the court could use any one of Defendants' responses as an example because each is identical.[1] Defendants' responses to requests for production provide:

> ZOOM [or IDV] objects to this request as vague, overly broad, unduly burdensome, harassing, and/or seeking information that is irrelevant and/or not reasonably calculated to lead to the discovery of admissible evidence. Subject to, and without waiving its objection, ZOOM [or IDV] indicates it does not have any responsive documents within its possession, custody and control.

Defendants' objections to these requests similarly lack any explanation.

---

[1] With one exception: Defendants' response to Request for Production 12 includes the addition of one sentence. For Zoom TV: "ZOOM notes, it provided documents previously to counsel for Defendants on this topic." (Dkt. #42-1 Pg. ID 382.) For Ideavillage: "IDV notes, it provided documents previously to counsel for Defendants on this topic." (Dkt. #42-2 Pg. ID 396.) The court doubts that Defendants meant to say that they provided documents to their own counsel; it seems more likely that Defendants simply referred to counsel for "Defendants" instead of "Plaintiffs" as a typographical error. Whether erroneously or correctly stated, this one sentence addition in no way cures the deficiencies and obstructionist behavior identified by the court.

Based on Defendants' representations at the hearing, the court will not now order Defendants to provide verifications for their discovery responses. Should the need arise later, Plaintiffs are invited to make an appropriate motion. The court will, however, turn to the substance—or lack thereof—in Defendants' discovery responses.

### i. The Problem of Boilerplate

Defendants' "objections" to these discovery requests are the typical boilerplate objections known and detested by courts and commentators—and receiving parties—around the nation. A "boilerplate" objection is one that is invariably general; it includes, by definition, "[r]eady-made or all-purpose language that will fit in a variety of documents." *Boilerplate*, Black's Law Dictionary (10th ed. 2014). Thus, "[a]n objection to a discovery request is boilerplate when it merely states the legal grounds for the objection without (1) specifying how the discovery request is deficient and (2) specifying how the objecting party would be harmed if it were forced to respond to the request."Jarvey, Matthew L., *Boilerplate Discovery Objections: How They Are Used, Why They Are Wrong, and What We Can Do About Them*, 61 Drake L. Rev. 913, 914 (2013).

Boilerplate objections to interrogatories and requests for production are not permitted under the Federal Rules of Civil Procedure. Rule 33(b)(4) requires that objections to interrogatories be made "with specificity" and provides that "[a]ny ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." Rule 34(b)(2)(B) requires that objections to requests for production "state with specificity the grounds for objecting to the request." Rule 34(b)(2)(C) further demands

7

that "[a]n objection must state whether any responsive materials are being withheld on the basis of that objection."

When objections lack specificity, they lack effect: an objection that does not explain its grounds (and the harm that would result from responding) is forfeited. "Boilerplate or generalized objections are tantamount to no objection at all and will not be considered . . . ." *Strategic Mktg. & Research Team, Inc. v. Auto Data Solutions, Inc.*, 15-12695, 2017 WL 1196361, at *2 (E.D. Mich. Mar. 31, 2017) (Murphy III, J.) (quoting *Nissan N. Am., Inc. v. Johnson N. Am., Inc.*, No. 09-11783, 2011 WL 669352, at *2 (E.D. Mich. Feb. 17, 2011) (Majzoub, M.J.)). Lawyers who purport to "preserve" an objection by including it in a boilerplate statement must be prepared to face the fact that the result of a substance-free objection is generally "the opposite of preservation[,]" i.e., forfeiture. Jarvey, *Boilerplate*, *supra*, at 925. Similarly, the common "notwithstanding-the-above" designations that frequently follow a boilerplate objection and precede a more substantive response also fail to preserve objections. *Id.* The idea that boilerplate in some talismanic way preserves an objection is fallacy. It has been fairly styled an "urban legend," one that promotes the misuse of the objection process and amounts to nothing less than "a waste of effort and the resources of both the parties and the court." *Id.* (quoting *Guzman v. Irmadan, Inc.*, 249 F.R.D. 399, 401 (S.D. Fl. 2008)).

This court is not the first—nor will it be the last—to condemn the use of boilerplate objections. Indeed, perhaps the only thing more surprising than the pervasive reliance on boilerplate is the practice's continued existence in the face of strong and widespread criticism by federal courts. *See, e.g., Black v. Pension Benefit Guar. Corp.*, No. 09-13616, 2014 WL 3577949, at *2 (E.D. Mich. July 21, 2014)

(Tarnow, J.) ("The Court strongly condemns the practice of asserting boilerplate objections to every discovery request."); *Kristensen v. Credit Payment Servs., Inc.*, No. 12-0528, 2014 WL 6675748, at *4 (D. Nev. Nov. 25, 2014) (describing a party's "general and additional objections" as "boilerplate objections which are designed to evade, obfuscate, and obstruct discovery"); *Lowe v. Vadlamudi*, No. 08-10269, 2012 WL 3731781, at *3 (E.D. Mich. Aug. 28, 2010) (Lawson, J.) (noting that a party's boilerplate objections "do not gain in substance through repetition"); *Marti v. Baires*, No. 08-00653, 2012 WL 2029720, at *11 (E.D. Cal. June 5, 2012) ("The Court will not countenance any party's effort to obstruct discovery through objections or evasive responses which lack any good faith basis."); *Near v. Eli Lilly & Co.*, No. 07-00006, 2008 WL 11334459, at *1 (S.D. Iowa July 16, 2008) ("[T]he use of boilerplate, unsubstantiated objections is rejected by federal courts."). These cases, in their interpretation of the discovery rules and their denunciation of boilerplate, "are not aspirational, they are the law." *Liguria Foods, Inc. v. Griffith Labs., Inc.*, 320 F.R.D. 168, 191 (N.D. Iowa Mar. 13, 2017).

### ii. Attorney Fees

Courts and commentators have called on courts to deter boilerplate by imposing sanctions with their inherent power and under Federal Rule of Civil Procedure 26. *See, e.g.*, *id.* at 187–88; Jarvey, *Boilerplate*, *supra*, at 932 ("In order to curb boilerplate objections, judges should be more willing to dole out sanctions against lawyers who abuse the discovery process by issuing these objections."). The advisory committee notes to Rule 26 also contemplate sanctions as a solution to discovery abuses. Fed. R. Civ. P. 26(g) Advisory Committee's Note to 1983 Amendment ("Thus the premise of

Rule 26(g) is that imposing sanctions on attorneys who fail to meet the rule's standards will significantly reduce abuse by imposing disadvantages therefor.")

Plaintiffs have requested their reasonable attorney fees incurred in connection with their motions to compel. (Dkt. #41 Pg. ID 309; Dkt. #42 Pg. ID 365.) The court agrees that in light of Defendants' conduct in discovery, and in light of the need to deter future use of boilerplate, a sanction in the form of attorney fees is warranted. Plaintiffs are not entirely blameless in this proceeding, however, as they delayed—without explanation so far as the court knows—for more than four months before serving their first discovery requests. The court will take Plaintiffs' delay into account when fashioning an appropriate sanction in this case. But the court will wait to decide the exact parameters of a fee shifting sanction until after Plaintiff has had an opportunity to be heard on what fees are warranted and the parties have had the opportunity to consult and agree.

**C. Discovery Deadlines**

In light of the foregoing, the parties agreed at the hearing that a limited extension of discovery deadlines is warranted. They suggested to the court that Defendants should have 45 days to amend their responses to Plaintiffs' discovery requests, and Plaintiffs should have 60 days to complete their depositions. The court agrees that these extensions are appropriate and will grant them. Because Defendants will amend their discovery responses, the court will not grant Plaintiffs' motions to compel at this time. Should Defendants' amended responses continue to appear facially deficient, however (especially if they again embrace unexplained boilerplate), Plaintiffs may file another motion to compel.

## III. CONCLUSION

Discovery is a matter that should be directed and controlled by attorneys in accordance with the federal rules and their professional and ethical obligations. The court does not enjoy stepping in to regulate the process where attorneys engage in foot-dragging and obstructionism. The court enjoys imposing sanctions even less. But here the parties have demonstrated that intervention is necessary, and the court has fashioned this order accordingly. Further intervention will no doubt be accompanied by more significant sanctions, all as may be justified by subsequent events. Accordingly,

IT IS ORDERED that Defendants' Motion for Protective Order (Dkt. #36) is GRANTED IN PART. Discovery in this matter will be limited to the period of approximately April 22, 2016 to the present.

IT IS FURTHER ORDERED that Plaintiffs' Motion to Compel Defendants' Responses to Plaintiffs' Interrogatories (Dkt. #41) and Plaintiffs' Motion to Compel Defendants' Responses to Plaintiffs' Document Requests (Dkt. #42) are DENIED WITHOUT PREJUDICE. Defendants will have until **January 25, 2018** to amend their responses to Plaintiffs' Interrogatories and Requests for Production.

IT IS FURTHER ORDERED that Plaintiffs have until **February 9, 2018** to complete their depositions.

IT IS FURTHER ORDERED that the dispositive motion cutoff is reset for **March 9, 2018**.

IT IS FURTHER ORDERED that Plaintiffs file a concise but explanatory memorandum of no more than about seven pages requesting attorney fees related to these motions by **January 19, 2018**; the request should take into account a reasonable

reduction for Plaintiffs' delay in commencing discovery. Plaintiffs should attach to their brief a reasonably detailed proposed invoice for attorney fees. Plaintiffs are expected to abide by E.D. Mich. L.R. 7.1(a)—which requires that they seek concurrence from Defendants and provide Defendants an opportunity to respond—before filing their request. Agreement between the parties on the details of a fees sanction obviates the need for Plaintiffs' memorandum.

                                          s/Robert H. Cleland          /
                                          ROBERT H. CLELAND
                                          UNITED STATES DISTRICT JUDGE

Dated: January 11, 2018

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, January 11, 2018, by electronic and/or ordinary mail.

                                          s/Lisa Wagner            /
                                          Case Manager and Deputy Clerk
                                          (810) 292-6522

S:\Cleland\KNP\Civil\17-10021.WESLEY.discovery.order.compel.protective.KNP.RHC2.docx