**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

WESLEY CORPORATION, et al.,

     Plaintiffs,

v.                                        Case No. 17-10021

ZOOM T.V. PRODUCTS, LLC, et al.,

     Defendants.

_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Nearly three years ago, Plaintiffs brought suit against Defendant Zoom TV Products ("Zoom TV") for patent infringement and breach of contract. That case settled a year later, but its saga was not yet complete; now before the court is Plaintiffs' action against Zoom TV and its marketing affiliate, Defendant Ideavillage Products Corporation ("Ideavillage"), for breach of the settlement agreement and trademark and patent infringement. Defendants and Plaintiffs have filed cross motions for summary judgment. (Dkt. ##61, 62.) The motions are fully briefed, and the court has determined that a hearing is unnecessary. E.D. Mich. L.R. 7.1(f)(2). For the following reasons, Defendants' motion will be granted, and Plaintiffs' motion will be denied.

## I. BACKGROUND

Contrary to the court's scheduling order (Dkt. #33), neither motion begins with a statement of material facts.[1] The court, therefore, relies on the complaint to set forth the

---

[1] Plaintiffs' brief begins with a "Concise Statement" that is a scattered collection of proclamations—most of which bear no citation to the record—and what appears to be

factual background of this case.

Plaintiff David Hanson invented a product that allows users to create stuffed food—most especially, stuffed hamburgers. He obtained a patent for his efforts, which was assigned to his company, Plaintiff Wesley Corporation. (Dkt. #1-3.) Wesley Corporation also owns the federally-registered trademark "STUFZ," which it uses in the distribution and sales of Hanson's product. (Dkt. #1-2; Hanson Decl., Dkt. #68 Pg. ID 1254.)

In June 2015, Plaintiffs brought suit against Zoom TV. Plaintiffs alleged that they had entered into a licensing agreement with Zoom TV whereby Zoom TV would have the right to manufacture and sell the "Stufz" food maker—and use the "Stufz" mark— while paying royalties. *See Wesley Corp. v. Zoom TV Prods.*, 15-12449 (Cleland, J.). According to Plaintiffs, after the licensing agreement was amended to account for Plaintiffs' new product ("Stufz Sliders"), Zoom TV breached the agreement. Plaintiffs sought to hold Zoom TV liable for patent infringement and breach of contract.

That case ended in a settlement agreement dated July 22, 2016. (Dkt. #1-1.) Relevant here, the agreement provided that Zoom TV and Ideavillage would "immediately cease all sales, advertising and promotion of Stufz and/or Stufz Sliders products (the 'Products'), [including] any website activities and/or advertisement." (Dkt. #1-1 Pg. ID 14.) The agreement further provided that those products that had already been sold to third parties—and for which a royalty had been paid—"shall remain in the marketplace and not subject to the foregoing as WESLEY's rights have been exhausted on those particularly [sic] products based on the royalty paid." (*Id.*) The agreement also

_____

portions of Plaintiffs' complaint copied verbatim. (Dkt. #62-1 Pg. ID 1062–66.)

contemplated the existence of "any molds, tools, or other materials designed to manufacture the Products." (*Id.*) According to the agreement, "[t]o the extent that such Tooling exists, ZOOM and IDEA VILLAGE shall advise third-party Well-Bra[i]n, to either deal with WESLEY exclusively or promptly destroy all Tools and provide a certificate of destruction if such Tooling is or has been destroyed." (*Id.* at Pg. ID 14–15.)

But the settlement agreement was not the end of the matter. Plaintiffs filed suit in January 2017, alleging that Zoom TV and Ideavillage have breached the terms of the settlement agreement and infringed on Plaintiffs' patent and trademarks. In particular, Plaintiffs allege that Defendants breached the agreement by continuing to sell, advertise, and promote "Stufz" products via "buystufz.com," a website Defendants owned and controlled. And, Plaintiffs say, the continued use of the website constitutes trademark infringement. Plaintiffs further claim that Defendants also took no action to destroy tooling used to make the Stufz products.

## II. STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003).

The movant has the initial burden of showing the absence of a genuine dispute as to a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant, who must put forth enough evidence to show that there

exists "a genuine issue for trial." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citation omitted). It is the parties' responsibility to support their factual assertions by citation to the record; the court is under no obligation to search for materials in the record uncited by the parties. Fed. R. Civ. P. 56(c).

## III. DISCUSSION

Defendants move for summary judgment as to all of Plaintiffs' claims. According to Defendants, there is no evidence that they breached the terms of the settlement agreement. As to Plaintiffs' allegations of patent and trademark infringement, Defendants say that these claims were released by the settlement agreement, and that these allegations similarly lack supporting evidence. Plaintiffs both respond and move for summary judgment on the basis that screenshots of Defendant's website "buystufz.com" show that Defendants continued marketing of Plaintiffs' products without permission.

### A. Breach of the Settlement Agreement

Plaintiffs claim that Defendants breached the settlement agreement firstly by continuing to sell, market, and advertise Stufz products on the internet. The claim is governed by Michigan contract law: "[a] party asserting breach of contract must establish by a preponderance of the evidence that (1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach." *Miller-Davis Co. v. Ahrens Const., Inc.*, 848 N.W.2d 95, 104 (Mich. 2014). "[C]ausation of damages is an essential element of any breach of contract action . . . ." *Id.*

Plaintiffs claim that Defendants breached the settlement agreement by maintaining their website "buystufz.com," thereby continuing to advertise and promote

Plaintiffs' products. They ask the court to take judicial notice of certain screenshots of the website allegedly showing that the site was up and running after the effective date of the settlement agreement. Defendants respond that the settlement agreement did not require them to "scrub" the internet of this kind of material. And at any rate, they say, Plaintiffs have not shown that they suffered any damage from the website remaining up.

The court need not decide whether Defendants improperly "promoted" or "advertised" Plaintiffs' products through maintenance of the website because Plaintiffs have shown no harm from the alleged breach—an essential element of their breach of contract claim. Apparently in response to Defendants' argument that Plaintiffs have not identified any damages, Plaintiffs offer this hypothesis: "If Defendants['] interactive websites offered the STUFZ products for sale, leading consumers to 'dead-links[,]' then consumers would be frustrated and have a negative impression of their buying experience." (Dkt. #73 Pg. ID 1402.) But Plaintiffs' proffered conjecture is not evidence of damages. Plaintiffs also ask that the court "order specific performance" of the settlement agreement. But they do not elaborate on what precisely that means. Indeed, the court is hard-pressed to pinpoint what Plaintiffs might be asking for, given that the website has been taken down and there is nothing to suggest it might be reinstated. (*See* Epstein Decl., Dkt. #61-3 Pg. ID 1050.) In the absence of any evidence that Plaintiffs were damaged by Defendants' continued use of the website, Defendants are entitled to summary judgment on this claim.

Plaintiffs' second claim is that Defendants breached the settlement agreement by failing to take action to destroy existing molds. But Plaintiffs seem to misunderstand what is required under the settlement agreement. The operative provision states: "[t]o

the extent that such Tooling exists, ZOOM and IDEA VILLAGE shall advise third-party Well-Bra[i]n, to *either* deal with WESLEY exclusively *or* promptly destroy all Tools and provide a certificate of destruction if such Tooling is or has been destroyed." (*Id.* at Pg. ID 14–15 (emphasis added).) Defendants, in other words, were under no obligation to destroy tooling if they advised Well-Brain to deal with Wesley exclusively. Defendants provided testimony that they did so. (*See* Cammarano Decl., Dkt. #61-2 Pg. ID 1042; Cammarano Dep., Dkt. #65-4 Pg. ID 1185.) Plaintiffs do not refute this testimony, though they note that Defendants were unable to set forth the details of the communication. (*See* Dkt. #73 Pg. ID 1405.) But Plaintiffs "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Casting some ephemeral uncertainty on Defendants' testimony is insufficient to meet their burden.[2]

Defendants are entitled to summary judgment on Plaintiffs' claims for breach of the settlement agreement.

### B. Patent Infringement

Plaintiffs claim that Defendants are liable for patent infringement in violation of 35 U.S.C. § 271. Under that provision, a party infringes a patent when it "makes, uses, offers to sell, or sells any patented invention." § 271(a). A party may also be liable as an infringer where it "actively induces infringement of a patent." § 271(b).

---

[2] Plaintiffs point the court to David Hanson's Declaration, in which he states that "Defendants never advise[d] me that Well Brain had received notice that Well Brain was to deal with Wesley exclusively." (Dkt. #68 Pg. ID 1256.) But the settlement agreement does not oblige Defendants to give such notice. And to the extent that Plaintiffs imply that the settlement agreement required Defendants to ensure that Well Brain would *agree* to deal with Plaintiffs exclusively, there is similarly no such requirement in the agreement.

Defendants argue that they are entitled to summary judgment as to Plaintiffs' patent and trademark claims under the terms of their settlement agreement. The agreement has a release providing that Plaintiffs released Defendants for any "losses, expenses, claims, defenses, liabilities, damages, demands, actions and/or causes of action" that they or their agents "can, shall, or may have against ZOOM and IDEA VILLAGE, from the beginning of time through and including the Effective Date of this Agreement, including but not limited to, any claims were raised [sic] or could have been raised in a lawsuit between WESLEY and HANSON, individually, and ZOOM and IDEA VILLAGE." (Dkt. #1-1 Pg. ID 15.) Because Plaintiffs' claims are sufficiently related to events dating prior to the settlement agreement, Defendants argue, this release bars Plaintiffs' claims.

Defendants rely on *Augustine Medical, Inc. v. Progressive Dynamics, Inc.*, 194 F.3d 1367 (Fed. Cir. 1999); in that case, which dealt with a settlement agreement under Minnesota law, the court was asked to decide whether the parties' contract foreclosed *future* patent infringement claims occurring after the settlement agreement was executed. The court determined that it did: the settlement agreement provided that the plaintiff released any claims that its owners "have, have had, or may have against PDI upon or by reason of or relating to any acts, omissions or statements made by PDI on or before the date of this Settlement Agreement." *Id.* at 1371. The court found that the language "may have" was "necessarily future-oriented" and "implie[d] a future possibility" of a claim by the plaintiff.

There is an important difference between the settlement agreement at issue in *Augustine* and the agreement here, however. While the contract language in *Augustine*

dealt with future claims "by reason of or relating to any *acts, omissions, or statements made*" before the settlement agreement, the language at issue here deals with "losses, expenses, claims, defenses, liabilities, damages, demands, actions and/or causes of action" up to the time of the settlement. This agreement, in other words, relates to *legal claims* existing at the time of the settlement, not actions or omissions made prior to its execution. Unlike the agreement in *Augustine*, the parties' agreement here does not specifically foreclose future claims based on *acts* taken prior to the settlement agreement—it forecloses only losses, expenses, causes of action, and the like arising before execution of the contract. That is, the agreement does not foreclose post-settlement claims that necessarily could not have existed prior to the settlement. To read the release as Defendants suggest would improperly read the temporal limitation— "from the beginning of time through and including the Effective Date of this Agreement"—out of the contract.

But Defendants also argue in the alternative: even if the release does not cover future claims for patent infringement, they say, they did not possess any product following the settlement agreement—meaning they could not have sold, advertised, or promoted Plaintiffs' products. (*See* Cammarano Decl., Dkt. #61-2 Pg. ID 1041; Epstein Decl., Dkt. #61-3 Pg. ID 1049.) They further note that, even if the website buystufz.com remained operative for a time, they could not have made an "offer to sell" Plaintiffs' products for the purposes of infringement under 35 U.S.C. § 271. Under the terms of the statute, an "offer for sale" or an "offer to sell" is defined as "that in which the sale will occur before the expiration of the term of the patent." Because Defendants had no product to sell, no sale could occur before the patent term expired.

Defendants are entitled to summary judgment on Plaintiffs' claims for patent infringement. Plaintiffs offer no response to any of Defendants' arguments as to their patent, nor do they make any argument of their own.[3] Plaintiffs have similarly set forth no evidence that Defendants sold or offered for sale any of Plaintiffs' products following the effective date of the settlement agreement. True, buystufz.com was apparently maintained for some time after the settlement agreement. But there is no evidence that any purported "purchase" on the website would have resulted in an actual *sale* before the expiration of Plaintiffs' patent because there is no evidence that Defendants had any product to sell. Without any evidence that Defendants made, used, offered to sell, or sold any of Plaintiffs' products—or induced another to do the same—Defendants are entitled to summary judgment.

### C. Trademark Infringement

Plaintiffs' complaint stated a claim for trademark infringement under the Lanham Act. 15 U.S.C. § 1114(1)(a). Trademark infringement requires proof that: "(1) [the plaintiff] owns the registered trademark; (2) the defendant used the mark in commerce; and (3) the use was likely to cause confusion." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009). Plaintiff has brought forth no evidence supporting this last element: use that was likely to cause confusion. And Defendants argue that there is none. (*See* Dkt. #72 Pg. ID 1397.)

---

[3] Indeed, it would be a generosity to describe Plaintiffs' briefing on either motion as half-hearted. Plaintiffs' briefs are riddled with typos and grammatical errors, and in many places they appear to include copy-pasted versions of Plaintiffs' complaint and supporting declarations.

The court agrees that Defendants are entitled to summary judgment on Plaintiffs' trademark infringement claims because those claims are unsubstantiated by any evidence in the record. Plaintiffs have brought forth no evidence of actual consumer confusion by any alleged continued use of Plaintiffs' mark.

Perhaps recognizing the lack of evidence to support this claim, Plaintiffs attempt to set forth an entirely new cause of action for the first time in their summary judgment motion: that Defendants' continued use of Plaintiffs' trademark constitutes trademark counterfeiting under § 1114(1)(b). According to Plaintiffs, Defendants' continued use of the Stufz mark after termination of their licensing agreement is trademark counterfeiting. Plaintiffs' claim is improper and foreclosed by their decision not to plead it in the complaint. *See Tucker v. Union of Needletrades, Indus. & Textile Emps.*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting 10A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 2723 (3d ed. Supp. 2005) ("At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Rule 15(a).")). To permit Plaintiffs to state a claim for trademark counterfeiting—which encompasses substantially different elements from trademark infringement—would "subject [D]efendants to unfair surprise," as they had no opportunity to investigate the claims during discovery. *Id.*

But even if Plaintiffs were permitted to bring forth such a claim at this late stage, it would fail. The Sixth Circuit has ruled that a franchisee's use of a trademark after termination of the franchise is not trademark counterfeiting. *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1192 (6th Cir. 1997) (interpreting the statutory provision mandating an award of attorney fees in counterfeiting cases and determining that

"[a]lthough the use of an original trademark is without authorization, it is not the use of a counterfeit mark").

## IV. CONCLUSION

While Defendants have carried their burden to show that there is no genuine dispute as to any material fact, Plaintiffs have not brought forth evidence sufficient to substantiate their claims. Accordingly,

IT IS ORDERED that Defendants' Motion for Summary Judgment (Dkt. #61) is GRANTED.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Summary Judgment (Dkt. #62) is DENIED.

s/Robert H. Cleland                    /
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  May 17, 2018

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, May 17, 2018, by electronic and/or ordinary mail.

s/Lisa Wagner                          /
Case Manager and Deputy Clerk
(810) 292-6522

S:\Cleland\KNP\Civil\17-10021.WESLEY.summary.judgment.KNP.docx